**Michael GUETTER, Respondent,**

v.

**BROWN COUNTY FAMILY SERVICES, Practitioner, Appellant.**

**No. C9–86–1578.**

Supreme Court of Minnesota.

Nov. 6, 1987.

---

Clark A. Tuttle, III, Asst. Co. Atty., Brown County, James R. Olson, Brown Co. Atty., New Ulm, for practitioner, appellant.

J. Brian O'Leary, Springfield, for respondent.

## OPINION

KELLEY, Justice.

The sole issue in this case involves the interpretation of Minn.Stat. § 626.556 (1986). In resisting the motion of a person seeking the identity of the person or persons who had accused him of sexually abusing children committed to his care, the state contended that Minn.Stat. § 626.556 should be interpreted to deprive the accused of this information unless after examining the report to, and investigation of, the agency concerning the alleged abuse, in camera, the trial court could find that the accusation was false and not made in good faith. The district judge refused to "write into" Minn.Stat. § 626.556 (1986), as it was then worded, the "good faith" requirement. The court of appeals agreed. *Guetter v. Brown County Family Services*, 401 N.W. 2d 117, 119 (Minn.App.1987). As a result of legislative activity which occurred during the 1987 legislative session after the rulings of both lower courts, we are constrained to reverse and uphold the contention of the state.

Father Michael Guetter, an ordained priest of the Roman Catholic church, has enjoyed an unsullied reputation for more than 45 years in his pastoral service to the church. The charges made against him arose from events allegedly occurring during his pastorate of St. Paul's parish in Comfrey, Minnesota. Some unidentified individual or individuals alleged to Brown County public authorities that Father Guetter had sexually abused young girls under his care. Investigation of the accusation by the Brown County Family Service Center, aided by the Brown County Sheriff's Department, produced no evidence to support the specific allegation of "sexual misconduct." By statement to the press and in-court response, the authorities so reported, and, in fact, the authorities took no other "action to protect minors under his

care." Therefore, it might reasonably be assumed any initial reputational damage sustained by Father Guetter at the time the existence of the charge became public knowledge might have been ameliorated to a substantial extent when the authorities so reported. Not so—in fact, from Father Guetter's standpoint, the damage was devastatingly exacerbated when Brown County authorities gratuitously added to the announcement, without either identifying the persons making the allegations or without specificity as to the type of conduct involved, the unusual conclusory statement, without further elaboration, that "general allegations of improper conduct by Father Guetter were supported."

Unless he was able to find some legal procedure affording him an opportunity to air all of the facts and circumstances surrounding any events leading to the nebulous and unspecific allegations of "improper conduct," Father Guetter understandably felt "crushed" by the realization that his reputation and church calling had been ruined beyond repair. His reputation could only be rehabilitated if he could publicly expose the falsity of the accusations and/or the motives of his accusers. But without certainty as to the identity of his accusers, this avenue of procedure seemed unavailable.[1] Father Guetter, therefore, sought an order mandating release to him of the name or names of his accusers from the district court.

When the trial court granted Father Guetter's motion and the court of appeals affirmed that ruling, Minn.Stat. § 626.556, subd. 11 (1986), insofar as relevant, provided:

> After the assessment or investigation is completed, the name of the reporter shall be confidential but shall be accessible to the individual subject of the report *upon court order*.

(Emphasis supplied).

In opposing the motion before the trial court, the Brown County Family Services argued that, notwithstanding its determination that the original specific charge of "sexual misconduct" was unsupported by additional investigation, nevertheless, that in applying Minn.Stat. § 626.556, subd. 11 (1986), the court should refuse revelation of the identity of Father Guetter's accuser until, in camera, the court had first received the agency's files and determined that the allegations were false and had been made in bad faith. In advancing the contention that the "false and in bad faith" requirement should be read into Minn.Stat. § 626.556, subd. 11 (1986), the state relied, by analogy, on Minn.Stat. § 626.557 (1986) entitled "Reporting of Maltreatment of Vulnerable Adults." The latter statute was enacted approximately five years after the enactment of Minn.Stat. § 626.556 but two years before the disclosure provision was amended to the language as it read in 1982. Upon its original enactment, the maltreatment of vulnerable adults statute required, as a precedent condition to release of informant identity, a court finding of falsity and bad faith.

The original legislative history leading up to 1982 amendment of the disclosure provision in Minn.Stat. § 626.556, subd. 11, which normally might afford some guidance to a court in statutory interpretation, is in this instance, at best equivocal. *See, e.g., Child Abuse Records*, 1982: Hearings on S.F. 2038 Before the Senate Judiciary Committee, 72nd Sess., March 3, 1982.[2] The courts below recognized the substantial distinctions in the requirements for disclosure in the two statutes, and, after applying accepted standards of statutory construction, refused to "impose such a limita-

---

**1.** Even though Father Guetter suspected the identity of his accusers, he was unsure. Therefore, should he make public statements in an attempt to "clear" himself in which he named his suspected accusers, and should those suspicions later prove to be unfounded, he would expose himself to a possible libel or slander suit.

**2.** It seems clear, for example, that at that time, at least Senator Berglin, one of the sponsors for the bill, recognized that although the drafters of the bill intended to make it consistent with the maltreatment of vulnerable adults statute, committee members treated requirements for disclosure in the 1982 amendment to Minn.Stat. § 626.556, subd. 11, somewhat differently than those in Minn.Stat. § 626.557.

tion on the trial court's discretion where none exists." *Guetter v. Brown County Family Services,* 401 N.W.2d 117, 119 (Minn.App.1987).

Even though both courts below applied acceptable standards of statutory construction, and even though applying similar standards to the facts then existing we might have affirmed, subsequent proceedings in the 1987 session of the legislature appear to clearly indicate that, indeed, in the 1982 amendment to Minn.Stat. § 626.556, subd. 11 (1986), the legislature intended, that as a precondition to release of the identity of the reporter alleging that a specific person had abused a minor, the trial court must first determine the accusation was false and that evidence existed that it had been made in bad faith.

The disclosure issue was brought before the 1987 legislature as a direct result of the opinion of the majority of the court of appeals panel in this case.[3] As the result, the disclosure provisions of the abuse of minors statutes was amended by Act of May 26, 1987, ch. 211, § 1, 1987 Minn.Laws 499, 500–01. Following the amendment, the applicable provisions of Minn.Stat. § 626.556, subd. 11, now reads:

> After the assessment or investigation is completed, the name of the reporter shall be confidential. *The subject of the report may compel disclosure of the name of the reporter only with the consent of the reporter or upon a written finding by the court that the report was false and that there is evidence that the report was made in bad faith.* This subdivision does not alter disclosure re-

sponsibilities or obligations under the rules of criminal procedure.

Minn.Stat. § 626.556, subd. 11 (Supp.1987) (emphasis supplied).

During the legislative committee hearings preceding enactment of the 1987 amendment,[4] Representative Vellenga explained that it had been the intent of the legislature in 1982 to make the disclosure provision of the abuse of minors statute consistent with the similar provision then existing in the maltreatment of vulnerable adults statute. She likewise informed the legislature that as the result of the court of appeals ruling, the issue was being addressed again. House Hearings March 31, 1987; House Hearings March 23, 1987. Reiterating what she emphasized at the senate hearing in 1982, Senator Berglin indicated that the drafters of the 1982 amendment to subdivision 11 intended that disclosure be granted if the report was found to be "false and in bad faith." Senate Hearings March 2, 1987. Mark Levinger, representing the Minnesota Attorney General's office, also stated that, in his opinion, the original intent of the 1982 amendment was the requirement of a written finding of falsity or evidence of bad faith, and that both courts below had failed to articulate sufficient reasons for ordering disclosure in the instant case. *See, e.g.,* House Hearings March 23, 1987. The expedition and thoroughness of the legislative reaction to the decision of the court of appeals in the present case, combined with statements made during the 1987 legislative hearings with respect to the intent of the enactors of the 1982 amendment, weigh heavily in favor of the conclusion that the

---

**3.** For example, the office of the Minnesota Attorney General originally brought the disclosure provision to the attention of Representative Vellenga as the result of the present controversy. Both Attorney Clark Tuttle, the attorney representing Brown County in this case, and Richard Embacher, Social Services Supervisor for the Brown County Family Service Center, who provided testimony by way of affidavit to the trial judge in the instant case, testified before the legislature.

**4.** *Child Abuse Reporting,* 1987: Hearings on H.F. 200 Before the House Judiciary Committee, 75th Sess., March 31, 1987 (in the text

denominated "House Hearings March 31, 1987"); *Child Abuse Reporting,* 1987: Hearings on H.F. 200 Before the Crime and Family Law Division of the House Judiciary Committee, 75th Sess. March 23, 1987 (herein denominated "House Hearings, March 23, 1987"); *Child Abuse Reporting,* 1987: Hearings on S.F. 424 Before the Senate Judiciary Committee, 75th Sess. March 2, 1987 (herein denominated "Senate Hearings, March 2, 1987"); *Child Abuse Reporting,* 1987: Hearings on S.F. 424 Before the Senate Judiciary Committee, 75th Sess., March 23, 1987 (herein denominated "Senate Hearings, March 23 1987").

legislature did intend the same type of result with respect to the 1982 amendment that it now has explicitly written into the statute by the 1987 amendment. Accordingly, we remand to the trial court to conduct an in camera examination of the files and records of the Brown County Family Service Center to ascertain whether the accusations were false and whether there exists evidence they had been made in bad faith. In so doing, we appreciate the merit of trial court's observation concerning the futility of such an inspection when it observed "it is hard to see how that would help matters." We concede that frequently, if not always, endemic to a determination of whether evidence of bad faith exists is the relationship existing between the accuser and the accused that might play a part in the motivation for such an accusation. Helpful to a court's finding of the existence of evidence of good faith, or its absence, is information such as the existence of ongoing disputes between the two, or, in this instance, the existence of animosity arising from former employment or policy disputes concerning the operation of the parish—all matters unlikely to appear in the files furnished by the agency to the court. The statute, however, contemplates that the trial court ascertain whether evidence of bad faith exists solely from the examination of these files. Under this restriction the trial court, nevertheless, must make written findings after examination of the evidence gathered during the investigation, consider as best possible from those records whether the reports reveal some known biases or prejudice against the subject of the report, or demonstrate that the reporter has "an axe to grind." From whatever evidence the file contains, the court must conclude whether there exists some evidence of bad faith. Factual evidence in the agency's file, or the absence thereof, may be of such character as to permit the judge to reasonably infer the existence of bad faith. To require this type of analysis in resolving the "evidence of bad faith" issue does not impose a completely novel procedure upon trial courts. In arriving at other types of ultimate conclusions, trial courts frequently have to

infer that the facts, or the absence of facts, provides sufficient evidence to sustain the ultimate conclusion drawn.

Reversed and remanded for proceedings not inconsistent herewith.

SCOTT, J., took no part in the consideration or decision of this case.